Filed 2/27/23  P. v. Zuniga CA4/2
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074958 |
| v. | (Super.Ct.No. INF065236) |
| ROGELIO LEON ZUNIGA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.  Reversed.

Correen Ferrentino, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorney Generals, Lance E. Winters, Julie L. Garland and Charles C. Ragland, Assistant Attorney Generals, Daniel Rogers, Christopher P. Beesley, Daniel Rogers, Alan L. Amann and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Rogelio Leon Zuniga appeals from a trial court's order denying defendant's petition for relief under Penal Code[1] section 1170.95. For the reasons set forth *post*, we find that defendant made a prima facie showing that he falls within the provisions of section 1172.6, and is therefore entitled to a remand for further proceedings on his petition.

## FACTUAL AND PROCEDURAL HISTORY

### A. PROCEDURAL HISTORY

A jury convicted defendant of first degree murder with robbery special circumstances under sections 187, subdivision (a) and 190.2, subdivision (a)(17). On February 1, 2013, the trial court sentenced defendant to one year plus life in prison without the possibility of parole.

After defendant appealed, we affirmed the judgment in *People v. Dunson et. al.* (Feb. 26, 2015, No. E056565 [nonpub. opn.]).

On July 26, 2019, defendant filed a petition for resentencing under section 1170.95. Defendant argued that he could not be convicted of murder today pursuant to the statutory changes pursuant to SB 1437. The People filed an opposition and argued that section 1170.95 was unconstitutional and defendant's robbery-murder special circumstance made him ineligible for relief. The trial court stayed the matter pending the outcome of two cases determining the constitutionality of SB 1437. Defendant filed a

---

[1] All further statutory references are to the Penal Code unless otherwise specified. In addition, section 1170.95 was renumbered effective June 30, 2022, to section 1172.6. (Stats. 2022, c. 58 (A.B. 200), § 100, eff. June 30, 2022.) We will refer to the new numbering and current version in this opinion.

reply in support of his petition to preserve his arguments on the constitutionality of SB 1437.

On November 22, 2019, the trial court lifted the stay.

On February 14, 2020, by oral motion, the People moved to have the petition dismissed because defendant's jury found true a robbery-murder special circumstance, the court sentenced defendant to life without the possibility of parole, and the court instructed the jury with CALCRIM No. 703, which required the jury to find that defendant acted with intent to kill or was a major participant with reckless indifference. The court granted the People's motion to dismiss the petition.

On March 18, 2020, defendant filed a timely notice of appeal. In an unpublished opinion filed on November 22, 2021, we affirmed the denial of the petition based on the state of the law at that time.

Defendant filed a petition for review, which was granted. On October 26, 2022, the California Supreme Court transferred the matter back to this court with instructions to vacate our previous decision and reconsider the cause in light of *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). In *Strong,* the California Supreme Court found that felony murder special-circumstance findings issued by a jury before the decisions of *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), which clarified the terms "major participant" and "reckless indifference to human life" in the special-circumstance statute, do not preclude a defendant from making out a prima facie case for resentencing of a felony-murder conviction, even if the trial evidence would have been sufficient to support the findings under *Banks* and *Clark*.

3

On October 27, 2022, we vacated our previous opinion and requested that defendant and the People file supplemental briefs. Defendant in his supplemental brief requests that this court direct the trial court to issue an order to show cause and hold a hearing pursuant to section 1172.6. The People agree with defendant and concede that remand to the trial court for further proceedings under section 1172.6 is required. We will remand the matter to the trial court for further proceedings.

B.   FACTUAL HISTORY[2]

In November 2007, Jackie Dunson and her brother Robert Dunson lived in the ground floor apartment of a two-story duplex in Indio. Ronald Handwerk occasionally stayed with them. Defendant and his girlfriend, M.J., lived in the apartment above the Dunsons' apartment. Fernando Benavidez was Jackie's boyfriend and visited at the apartment occasionally. Jackie sometimes would engage in prostitution and Benavidez would bring her clients, or "dates." In November 2007 Robert, Jackie, M.J., Handwerk, Benavidez, and defendant hung out together and smoked methamphetamine in the Dunsons' apartment on most days.

On November 25, 2007, M.J., Benavidez, Robert, defendant, Handwerk, and Jackie were at the Dunsons' apartment. Benavidez offered to find someone to bring back to the apartment to have sex with Jackie. Robert did not want his sister to engage in sex for money, so he proposed that they bring a man "back to the apartment, beat his ass, rob

_____

[2] The facts are taken from our unpublished opinion in case No. E056565. An unpublished case may be cited for the purpose of providing a factual background. (*Pacific Gas & Electric Co. v. City and County of San Francisco* (2012) 206 Cal.App.4th 897, 907, fn. 10.)

4

him, and take all of his shit." Jackie nodded her head in agreement. Defendant and Handwerk said nothing. Benavidez left the apartment to find someone and M.J. and defendant went back to their upstairs apartment.

A surveillance videotape from the Spotlight 29 casino, which was approximately five minutes from the Dunsons' apartment, showed Benavidez entering the casino just after midnight during the morning of November 26, 2007. He eventually was able to persuade the victim, William Dobbs, to come with him to the Dunsons' apartment. They drove together in Dobbs's car.

At some point that night or early morning, M.J. woke to the voice of a man in the Dunsons' apartment screaming: "Oh, God. Please help me." M.J. described the screaming as "gut wrenching," "like someone is in pain, like they were hurt [and] screaming for someone to help them." She also heard "very loud" sounds of banging on a wall downstairs, "like something pretty heavy slamming up against the wall." Defendant told M.J. to go back to sleep. Handwerk went upstairs, woke defendant and told him to go downstairs because he had broken someone's ribs and Handwerk's hand was "messed up." M.J. went back to sleep.

In the predawn hours of November 26, 2007, T.S., who was friends with Robert and Jackie, walked to the Dunsons' apartment. As she approached, she saw Benavidez walking away from the apartment. When she got closer to the apartment, she heard Jackie arguing, yelling, and crying. T.S. heard Jackie say, "he was acting stupid," and "[h]e doesn't want to give [the money] to her." A side door to the apartment was ajar. As T.S. passed by that door, she heard Robert yelling loudly and angrily, " '[g]et down,

5

mother fucker' " and "[t]hese better be the right PIN numbers." T.S. watched Robert push a man to his knees. The man appeared to have blood under his chin. Robert then put a plastic bag over the man's head and used duct tape to secure the bag to the man's neck and face. T.S. decided to leave. As she left, she heard Robert say: "Come on, mother fucker. We're going for a ride."

Robert recruited defendant to help him. Jackie watched as defendant and Robert drove off with Dobbs in Dobbs's car. M.J. asked for defendant, and Jackie told her that he and Robert had to go somewhere but that they would back.

M.J. went downstairs to the Dunsons' apartment the morning of November 27. Robert was kneeling in a corner of the living room scrubbing the walls with bleach and pulling up the carpet. He gave M.J. a bank card and a piece of paper with a PIN number written on it and told her to pull out as much money as she could and bring it back to him. Between 10:26 a.m. and 11:39 a.m. on November 27, M.J. and defendant used Dobbs's bank card to retrieve approximately $1,000 from different ATMs. When she and defendant returned to the Dunsons' apartment, she gave him $300, the bank card, and the piece of paper with the PIN number. M.J. kept the remaining cash.

Dobbs's body was found on November 27 two miles from the Spotlight 29 casino; he had a black bag attached to his neck with red tape. He had been stabbed with a sharp instrument 14 times, mostly on his face and neck. His internal and external jugular veins and carotid artery were severed, and his trachea was also severed. He had bruises and abrasions on his face and scalp, and signs of blunt force trauma to his chest. He had four broken ribs, which caused ruptures to his liver and lung. The forensic pathologist who

6

performed the autopsy on Dobbs described the injuries as "brutal," and said it "looked like perhaps some injuries were inflicted for the purpose of torture" and for "causing pain."

Dobb's car was found on December 1, 2007, approximately 100 yards from the Dunson's apartment. (*People v. Dunson*, 2015 Cal.App. Unpub. LEXIS 1445, *3-12)

## DISCUSSION

In light of the decision in *Strong*, *supra*, 13 Cal.5th, remand to the trial court for further proceedings is necessary.

SB 1437 became effective January 1, 2019. "[SB 1437] modified California's felony murder rule and natural and probable consequences doctrine to ensure murder liability is not imposed on someone unless they were the actual killer, acted with the intent to kill, or acted as a major participant in the underlying felony and with reckless indifference to human life." (*People v. Cervantes* (2020) 46 Cal.App.5th 213, 220.) As relevant here, SB 1437 added section 189, subdivision (e), which provides, "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e).) Section 190.2, subdivision (d) provides, "Notwithstanding subdivision (c), every person, not the actual

7

killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4."

SB 1437 also created a process through which convicted persons can seek resentencing if they could no longer be convicted under the reformed homicide law. (§ 1172.6, subd. (a).) Section 1172.6, subdivision (a), provides in part, "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts." Section 1172.6, subdivision (c), provides, "Within 60 days after service of a petition . . . , the prosecutor shall file and serve a response. The petitioner may file and serve a reply within 30 days after the prosecutor's response is served. These deadlines shall be extended for good cause. After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the

8

court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." If the petitioner makes a prima facie showing he is eligible for relief under section 1172.6, the court shall hold an evidentiary hearing. (§ 1172.6, subds. (c) & (d)(1).) At this hearing, either party may present new evidence and the prosecution bears the burden of proving the petitioner could still be convicted beyond a reasonable doubt. (§ 1172.6, subd. (d)(3).)

In *Strong*, the California Supreme Court resolved a split of the Courts of Appeal as to whether a special circumstance finding reached prior to *Banks* and *Clark* precluded relief under section 1172.6. *Banks* and *Clark* "substantially clarified the law" regarding what it means to be a major participant who acts with reckless indifference to human life for the purposes of the special circumstance statute. (*Strong*, *supra*, 13 Cal.5th at pp. 706-707, 721.) The *Strong* court concluded that where a defendant's "case was tried before both *Banks* and *Clark*, the special circumstance findings do not preclude him [or her] from making out a prima facie case for resentencing under section 1172.6." (*Strong*, at p. 721.) A court "err[s] in concluding otherwise." (*Ibid*.)

In this case, the trial court summarily denied defendant's petition for resentencing based on the felony-murder special circumstance finding made by the jury. However, the jury finding predated *Banks* and *Clark*. Hence, the special circumstance finding did not preclude defendant from "making out a prima facie case for resentencing under section 1172.6." (*Strong*, *supra*, 13 Cal.5th at p. 721.) We agree with the People that "[s]ince the felony-murder special circumstance finding in appellant's case was made before

9

*Banks and* Clark*,* this finding does not render him ineligible for resentencing. Therefore, the trial court's order summarily denying appellant's petition should be reversed and this matter remanded for further proceedings consistent with the dictates of *Strong*."

Accordingly, we must remand the matter for the trial court to consider defendant's petition in light of *Strong* as nothing in the record demonstrates that defendant is ineligible for relief as a matter of law. The trial court shall give defendant's counsel an opportunity to provide briefing, determine whether defendant has made out a prima facie case for relief and, to the extent necessary, issue an order to show cause and conduct an evidentiary hearing. (§ 1172.6, subds. (c), (d)(1) & (3).)

## DISPOSITION

The trial court's order denying the petition is reversed and the matter is remanded for further proceedings pursuant to section 1172.6, as set forth in this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
Acting P. J.

We concur:

CODRINGTON _____
J.

FIELDS _____
J.

10